UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CHARLES J. LOWE,

    Plaintiff,

v.                          CASE No.: 4:02-cv-162-3 (CDL)

VALLEY SERVICES, INC.,

    Defendant.

_____/

## COMPLAINT – JURY DEMAND

Plaintiff Charles J. Lowe sues Defendant Valley Services, Inc. and alleges:

### Jurisdiction and Venue

1. This is an action for equitable relief and damages brought pursuant to 42 U.S.C. § 1981 of the Civil Rights Act of 1866.

2. The Court has jurisdiction under 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391.

### Parties

4. Plaintiff is non-white and resides in Columbus, Georgia.

5. Defendant Valley Services, Inc. is a corporation doing business in Georgia.

### Conditions Precedent

6. Plaintiff has satisfied all conditions precedent to the bringing of this action.

### Allegations of Fact

7. The Defendant is engaged in the business of providing food services to, among others, jails in Georgia and other states.

8. Defendant employed Plaintiff from December 7, 1992 to April 19, 2002. Plaintiff was initially hired into the position of Senior Nutrition Bench for the Defendant's State and Federal Division. Shortly thereafter, Defendant promoted the Plaintiff to the position of Unit Manager in charge of the Dekalb County Georgia Jail. Plaintiff remained in this position until around November 1994 when he became the Unit Manager of the Fulton County Georgia Jail. Plaintiff's duties as a Unit Manager consisted of administering the food services provided by the Defendant to each jail.

9. During this time, Plaintiff's immediate supervisor was Richard Newsky, a District Manager. Newsky is white. Newsky and Mike Craft, the then Vice-President of State and Federal Corrections for the Defendant, told Plaintiff in or around November 1994 when the Fulton County Jail contract was first obtained that the Defendant wanted Plaintiff to manage these units because it needed someone black since the area and staff of Fulton County jail were black and that someone white would not fit in.

10. In or around late 1995 or early 1996, the Plaintiff was promoted to the position of Resource Manager. In this position, Plaintiff's principal duties consisted of supervising the administration of the food services provided to the Fulton County and Dekalb County jails. The Fulton County and Dekalb County jail contracts were some of the largest, if not the largest, jail contracts held by the Defendant.

11. Throughout his employment with Defendant, the Plaintiff always performed his job in a satisfactory manner, either meeting or exceeding the Defendant's expectations. The Plaintiff never received any verbal or written counseling for his job performance.

12. During his employment the Plaintiff was denied promotion to the position of District Manager in favor of less qualified white employees. In particular, Chad Lee, who is white, was promoted to the position of District Manager in 2001. The Defendant did not post the position or otherwise inform the Plaintiff of it. The Plaintiff had made known his desire to be promoted to District Manager before Lee was promoted and the Defendant knew before it promoted Lee that the Plaintiff was interested and qualified for the position, but did not consider or select him. Plaintiff was more qualified for the position than Lee.

13. In or around early 1999, the Defendant lost its contract with the Dekalb County Jail. Subsequently, in July 2001, the Defendant lost its contract with Fulton County Jail. Prior to the year 2001, the Plaintiff had always submitted the bid for the Fulton County jail contract. Each year the Defendants won the bid. In 2001, Newsky told Plaintiff that he would no longer be submitting the bid but that Charlie Hartsfield, who is white, would be doing so. Hartsfield submitted the bid late and the Defendant lost the contract with Fulton County jail. Hartsfield suffered no consequence as a result of this.

14. Following the loss of the Dekalb and Fulton County contracts, the Plaintiff was assigned to fill in for managers at different facilities under Newsky and Midge Sirmans, who is also white and was a District Manager. Plaintiff worked with teams to open new facilities and troubleshoot problems. Newsky warned the Plaintiff that he might encounter resistance when going to southern jails because the sheriffs were white and might not feel that a black would fit in. Newsky referred to these jails, which were located in Polk, Pierce, Cherokee and Coweta Counties, as being in "redneck" country.

Contrary to Newsky's warning, Plaintiff did not encounter any resistance from white sheriff department personnel or any other white staff in his interactions.

15. On or about December, 2001, Plaintiff was informed that Newsky, who had been his supervisor for the past 8 or 9 years and had always evaluated him, would not be doing his evaluation. Rather, Benny Anderson, who is white, would be doing it. Anderson was not within the Plaintiff's chain of command. Anderson told the Plaintiff that he had been directed by Denton Peabody, who is white and a senior management official of the Defendant, to evaluate Plaintiff. Anderson further told Plaintiff that Peabody instructed him to rate Plaintiff poorly and that Plaintiff was not going to like the rating. Anderson subsequently gave Plaintiff a poor evaluation, which Plaintiff was required to sign. Plaintiff is informed and believes that Newsky actually did an evaluation of him but it was not used.

16. Subsequently on April 19, 2002, Anderson summoned Plaintiff to meet him in the office of Charlie Hartsfield in Atlanta. Hartsfield is white and is a Vice-President of Corporation Development. When he arrived, he met with Anderson and Hartsfield. They told him that he was fired because he allegedly had to be called back three times the previous weekend to the jail he was overseeing. This was not true. They refused to tell the Plaintiff who had made the allegation or any other specifics and directed him to Sandra Wilkins at the Defendant's Human Resources office. Plaintiff immediately called Wilkins, who expressed shock and when he told her the alleged basis for the firing, stated "is that all."

17. Hartsfield had previously made numerous racists comments directed at the Plaintiff and other non-white employees of the Defendant. In December 2001, Plaintiff

4

walked into Hartsfield's office for a meeting and heard Hartsfield say to someone on the telephone, "If it wasn't for the black overpaid . . ." before Hartsfield noticed him and cut off his sentence.  After the meeting, Plaintiff went to lunch with Hartsfield and Newsky.  At the restaurant Hartsfield remarked to the white waitress that she probably couldn't see Plaintiff as dark as it was in the restaurant.  On yet another occasion when Plaintiff was riding with Newsky to Hartsfield's office for a meeting, Newsky called Hartsfield on the car speakerphone and asked Hartsfield if he had talked to Dionne at G.S.C. service, a black woman.  Hartsfield replied, "Yes, I talked to her.  She's just another black nigger bitch that thinks she has some power."  Newsky then told Hartsfield that Plaintiff was in the car with him.  Hartsfield replied, "Well, she is a bitch."  At the meeting, Newsky and Hartsfield acted as if nothing had happened.

18. In January 2002, Plaintiff attended a meeting with Anderson, Newsky and Sirmans about bonuses and performance evaluations.  Newsky remarked, "Well, it's a good thing that were are not going to the Rusty Nail today because the waitress really would not be able to see Charles, because he's dressed in all that black."  Anderson continued the meeting as though nothing had happened.  On previous occasions, Newsky had told Plaintiff that Defendant was a "lily white" company and he needed to cover his backside.

19. In December 2001, the Plaintiff and the rest of the team he worked with to open the Adel County Jail, including Newsky, Hartsfield and Heidi McAllister, all of whom are white, had group pictures taken for use in a write-up about the opening that was to be published in the Defendant's newsletter.  An article and a picture later appeared

5

in the newsletter about the opening. However, Plaintiff's name was not mentioned and his picture was missing from the photograph used for the article.

20. Defendant's foregoing actions and treatment of Plaintiff were taken on account of Plaintiff's race and color, non-white, and violate Plaintiff's right to make and enforce contracts and to the full and equal benefit of all laws and proceedings as enjoyed by white citizens under 42 U.S.C § 1981.

21. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered injury, including, but not limited to lost wages and benefits, physical and emotional distress, mental pain and anguish, expense, hurt, embarrassment, humiliation, indignity and loss of enjoyment of life.

22. Defendant's foregoing actions were purposeful, willful, wanton or in reckless disregard of Plaintiff's rights and Defendant should be punished to deter future violations.

23. The actions of Defendant constitute a continuing violation of 42 U.S.C. § 1981.

## Jury Demand

24. Plaintiff demands trial by jury on all issues so triable.

## Prayer for Relief

WHEREFORE, Plaintiff demands the following relief:

a. Entry of judgment against Defendant awarding Plaintiff compensatory and punitive damages under 42 U.S.C. § 1981;

b. Entry of judgment against Defendant awarding Plaintiff prejudgment interest;

c. Entry of judgment against Defendant awarding Plaintiff attorney's fees and costs as provided by law; and

e. Such other relief as this Court deems to be equitable and just.

JOHN C. DAVIS
Georgia Bar No. 210820
Spriggs & Davis, P.A.
324 West College Avenue
Tallahassee, Florida, 32301-1499
(850) 224-8700
Fax (850) 224-8836
Attorneys for Plaintiff